## ISSENHUTH v. KIRKPATRICK.

(Circuit Court of Appeals, Eighth Circuit. May 29, 1919.)

### No. 5279.

1. ACTION ⬅22—ACTION AT LAW—FRAUD.

Action is one at law; the complaint, though alleging a sale of stock by plaintiff to defendant. in which defendant made fraudulent representations, which were relied on by plaintiff, not offering to return the stock nor seeking cancellation of plaintiff's notes given in part payment, but asking only for money judgment equal to money he had paid and his unpaid notes.

2. ELECTION OF REMEDIES ⬅3(2)—INCONSISTENT REMEDIES—SALES.

It is an election between inconsistent remedies, preventing subsequent change, where one, defrauded in a purchase and knowing the facts, brings action for damages, instead of rescinding and suing for what he had paid.

3. ELECTION OF REMEDIES ⬅9—OPERATION—CHANGE BY STATUTE.

The rule that one, having with knowledge of the facts made an election between inconsistent remedies, abandons the other and may not elect again, is not changed by Judicial Code, § 274a (Comp. St. § 1251a), authorizing a party to amend his pleading, to obviate objection that action was brought on the wrong side of the court.

4. JURY ⬅31(1)—DEPRIVATION OF RIGHT—TRANSFER TO EQUITY DOCKET.

For the court to permit a transfer of action at law for fraud in a sale to the equity docket is an error affecting the substantial right of defendant to a jury trial, requiring reversal.

Appeal from the District Court of the United States for the District of South Dakota; Frank A. Youmans, Judge.

Action by R. H. Kirkpatrick against Charles C. Issenhuth. Decree for plaintiff, and defendant appeals. Reversed, with directions.

In the lower court the plaintiff, Kirkpatrick, filed a bill of complaint against the defendant, Issenhuth, alleging that Issenhuth had sold him, in June, 1912, 250 shares of the capital stock of the United Mercantile Agency, hereafter referred to as the company, and that he had made the purchase relying on false and fraudulent representations made by the defendant and known by him to be false. The plaintiff alleged that he had paid the defendant $3,000 in cash, for the stock, had executed a series of notes for the remaining $2,000 of the purchase price, one payable each month after the sale, and had paid five of these notes. The representations alleged were, in substance, that Issenhuth had stated that the company was in a sound financial condition, doing a large and extensive business, and was a solvent and growing institution; that the stock, of the par value of $100 per share, was worth and was selling in the open market for $200 per share; that defendant had himself invested $26,000 in the company's stock, and desired more, but was unable to obtain it because the company had sold all of the stock that it wished to sell, and the only stock that could be obtained was stock reserved by the company for district managers of new offices, and that the Omaha office had had allotted to it $5,000 worth of the stock, which the person who was to be district manager must buy; that the company was not in need of money, and it would take $3,000 in cash and $2,000 in notes for the stock, which was not the stock of Issenhuth, but treasury stock of the company; that in consideration of the payment of the $5,000 for this stock the plaintiff would be made the district manager at Omaha, and would receive a salary of $150 per month for two years; that defendant claimed to be the district manager at Omaha, and that his position with the company required that he should go to new cities and open and establish offices of the company and find district managers to take sufficient stock to hold such positions.

The plaintiff averred that Issenhuth did not sell plaintiff treasury stock, but caused the company to take up the certificates for 250 shares that the defendant had owned, and to issue an equivalent amount of shares to the plaintiff, and that plaintiff turned over these shares to defendant as security for the payment of his notes for the unpaid $2,000 of the purchase price. He charged that the $3,000 he paid went directly to defendant and was kept by him, and that his notes which he made payable to the company were at once indorsed without recourse to the defendant, and still belonged to defendant and were in his possession. The plaintiff concluded by alleging that the company soon was declared bankrupt and ceased business; that he lost his position as district manager and his salary as such manager ceased; that the consideration for which plaintiff paid defendant the money and gave the notes had entirely failed. Whereupon he prayed judgment against the defendant for $5,000 and interest thereon from the date of the sale.

The answer denied generally the allegations of fraudulent representations, set forth some affirmative defenses, and alleged as a counterclaim the 19 notes signed by plaintiff, made payable to the company and assigned to the defendant, and prayed judgment for the amount thereof.

Plaintiff's reply admitted the execution of the notes, and that defendant was the owner and holder of them. The prayer of the reply was that the amount due on the notes be offset against the $5,000 and interest sought to be recovered in the plaintiff's complaint, and that plaintiff have judgment for the difference, and that the notes set forth in the defendant's counterclaim be deposited in court and canceled.

The case came on for trial, and a jury was impaneled, and the plaintiff produced evidence endeavoring to support the allegations of his petition. The defendant then requested the court to instruct the jury that a verdict should be returned in favor of the defendant. After a colloquy between court and counsel, in which plaintiff's counsel claimed that the action was not brought

as a suit for rescission, but as an action for deceit, and the court had indicated that the motion would have to be sustained, the plaintiff asked to have the case transferred to the equity docket, and an order was made, over the objections of the defendant, transferring the case, with leave to the parties to amend their pleadings. The jury was discharged from further consideration of the case, and the evidence of the defendant was produced, and further evidence was given on behalf of the plaintiff in rebuttal.

Afterwards amended pleadings were filed; the plaintiff adding to the allegations made in his former complaint an offer to restore and to return to the defendant the certificate for 250 shares of stock in the company which was then in defendant's possession. He also alleged that the defendant still retained the 19 promissory notes that he had given, that they could be assigned to different persons, and the prayer was that the contract of sale of the shares of stock be rescinded and canceled, that the notes be returned and canceled, that the certificate for shares of stock be returned to the defendant, and for judgment for $3,250, the amount that plaintiff had paid to the defendant and for equitable relief.

An answer was filed to this amended bill of complaint, and the findings and decree of the court were in favor of the plaintiff and in accordance with the prayer of the amended bill. The defendant has appealed.

A. K. Gardner, of Huron, S. D. (Irwin A. Churchill, of Huron, S. D., on the brief), for appellant.

A. B. Fairbank, of Sioux Falls, S. D. (R. H. Warren, of Sioux Falls, S. D., on the brief), for appellee.

Before SANBORN and CARLAND, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge (after stating the facts as above). Some of the errors assigned challenge the action of the court in withdrawing the trial of the case from the jury and in ordering its transfer to the equity docket, and the trial and determination of it thereafter as if it were a suit in equity. The defendant objected to this action of the court because the evidence showed that the plaintiff was not entitled to maintain a suit for rescission, and because he had elected to bring the action as one at law for deceit and was bound by such election. The court was of the opinion that section 274a of the Judicial Code (Act March 3, 1915, c. 90, 38 Stat. 956 [Comp. St. § 1251a]) authorized the transfer.

[1, 2] The plaintiff did not bring this action until 4½ years after he purchased the defendant's stock. Long before he brought his action he knew the substantial facts as to the fraud that he says was perpetrated upon him by the defendant. The plaintiff elected to sue at law for his damages. He did not offer to return the shares of stock which stood in his name. He did not seek a cancellation of his outstanding notes, but asked only for a money judgment of an amount equal to the money he had paid defendant and to the amount of his obligation on the unpaid notes. The action was therefore one at law. Buzard v. Houston, 119 U. S. 347, 7 Sup. Ct. 249, 30 L. Ed. 451; Curriden v. Middleton, 232 U. S. 633, 34 Sup. Ct. 458, 58 L. Ed. 765; White v. Boyce (C. C.) 21 Fed. 228; 1 Pom. Eq. Jur. § 237. He had a choice between two remedies—either to rescind the purchase and recover what he had paid, or to affirm the contract and to sue for the

damages he had sustained. The remedies were inconsistent, and an election of one was an abandonment of the other. Stuart v. Hayden, 72 Fed. 402, 18 C. C. A. 618; A. Klipstein & Co. v. Grant, 141 Fed. 72, 72 C. C. A. 511; In re Jacob Berry & Co., 174 Fed. 409, 98 C. C. A. 360; 2 Black on Rescission, § 612.

In the case of Robb v. Vos, 155 U. S. 13, 15 Sup. Ct. 4, 39 L. Ed. 52, the court quotes with approval this statement of the rule from a decision of the Supreme Court of Michigan (Thompson v. Howard, 31 Mich. 309):

"A man may not take contradictory positions; and where he has a right to choose one of two modes of redress, and the two are so inconsistent that the assertion of one involves the negation or repudiation of the other, his deliberate and settled choice of one, with knowledge, or the means of knowledge of such facts as would authorize a resort to each, will preclude him thereafter from going back and electing again."

[3, 4] Has this rule changed by the enactment of section 274a of the Judicial Code? which reads:

"That in case any of said courts shall find that a suit at law should have been brought in equity or a suit in equity should have been brought at law, the court shall order any amendments to the pleadings which may be necessary to conform them to the proper practice. Any party to the suit shall have the right, at any stage of the cause, to amend his pleadings so as to obviate the objection that his suit was not brought on the right side of the court. The cause shall proceed and be determined upon such amended pleadings. All testimony taken before such amendment, if preserved, shall stand as testimony in the cause with like effect as if the pleadings had been originally in the amended form."

There is no legal reason why the plaintiff should not have brought his action at law as he did, though there may have been practical reasons why an equitable suit would have been wiser. He had the right to consider the nature of the proofs he would be required to furnish, and the comparative advantages of the forms of relief offered and of the means of enforcing a judgment or decree; but, when he had elected between the institution of inconsistent remedies, it cannot be said that an action at law for deceit, which he properly brought, if he chose to bring it, should have been brought as a suit in equity. The transfer to the equity docket was not asked because of any claimed discovery that his action for deceit should have been brought in equity, but because there seemed to be a failure of proof of an essential element of his case. Section 274a of the Judicial Code permits one who is entitled to a remedy to retain it in the suit he has brought by a transfer of the case to the proper docket, although his suit may have been brought at law, when it should have been brought in equity, or vice versa; but it does not restore a remedy to one who is not entitled thereto, when he has abandoned and waived it in favor of an inconsistent remedy. The action of the court in permitting a transfer of this case to the equity docket was an error affecting the substantial right of the defendant to a jury trial in a law action (Ex parte Simons, 247 U. S. 231, 38 Sup. Ct. 497, 62 L. Ed. 1094), and requires a reversal of the decree and a new trial. As the remaining questions may

not be presented in the same form after a new trial, it is not necessary to consider them further.

The decree of the lower court will be reversed, with directions to vacate the order transferring the case to the equity docket and to grant a new trial in the action at law.