### MILLER et al. v. UNION ASSUR. SOC., LIMITED, OF LONDON, ENGLAND.

Nos. 8617, 8618.

Circuit Court of Appeals, Eighth Circuit.
Feb. 3, 1930.

Rehearing Denied April 21, 1930.

Bruce Barnett, of Kansas City, Mo. (E. M. Harber, of Trenton, Mo., and Charles W. Crossan, of Kansas City, Mo., on the brief), for appellants.

Murat Boyle, of Kansas City, Mo. (William S. Hogsett, of Kansas City, Mo., on the brief), for appellee.

Before KENYON and BOOTH, Circuit Judges, and REEVES, District Judge.

REEVES, District Judge.

Under the rule of conventional subrogation the appellee was granted a decree for the recovery of a specified sum of money against the appellant. To satisfy said decree, the court below adjudged same a lien against certain real estate which was ordered sold.

Appellee was engaged in the fire insurance business and issued its two policies of insurance in the sum of $2,000 and $8,000, respectively, to the appellant. These policies were issued for a period of one year, expiring in March, 1926. By their terms they un-

dertook to assure the appellant against direct loss or damage by fire to a building on premises owned by him and situated in Kansas City, Mo.

On the 1st of October, 1925, and while said policies were in force, the said building was admittedly damaged by fire to an extent in excess of the amount stipulated in said policies. The real estate was incumbered with a mortgage or deed of trust, and there was attached to said policies a mortgage clause providing for the payment to the mortgagee, in the event of loss, as "such interest may appear." In accordance with this provision, the appellee paid the amount due on said mortgage. There was another provision in the mortgage clause to the effect that the interest of the mortgagee "shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property * * * nor by any change in the interest, title or possession of the property, nor by any increase of hazard."

On account of the foregoing provisions in the policy, the appellee acknowledged liability to the mortgagee to the extent of the note with accumulated interest secured by said mortgage, but denied liability to the mortgagor and did so under the following provisions of said policy: "This entire policy, * * * shall be void if the hazard be increased by any means within the control or knowledge of the insured, or if any change, * * * take place in the * * * possession of the subject of insurance (except change of occupants without increase of hazard) or if * * * there be kept, used, or allowed on the above described premises, * * * gasoline * * * or other explosives * * * or petroleum or any of its products of greater inflammability than kerosene oil of the United States standard."

And there was a provision in the policy that: "On payment to such mortgagee (or trustee) of any sum for loss or damage hereunder, if this Company shall claim that as to the mortgagor or owner, no liability existed, it shall, to the extent of such payment be subrogated to the mortgagee's (or trustee) right of recovery and claim upon the collateral to the mortgage debt, * * * or it may pay the mortgage debt and require an assignment thereof and of the mortgage."

Asserting that the policies had become void as to the mortgagor, the appellee claimed the rights vouchsafed by the foregoing provisions and instituted its suit in equity for recovery against the appellant and for a decree of foreclosure against the real estate. To in-

voke said provisions, the appellee alleged that for a long time prior to October 1, 1925, the date of the fire, "the premises described in said policies were used for the purpose of illegally and unlawfully manufacturing alcoholic products and that alcoholic products, and stills and devices and materials for the purpose of manufacturing said products, were illegally and unlawfully kept and used upon said premises and that alcoholic products were illegally and unlawfully conveyed to and from said premises. That all of said matters were in violation of law, and greatly and materially increased the ordinary risk and hazard of fire. That said unlawful things and matters were not usual and incidental to the business ordinarily conducted on the premises or the business conducted thereon at the time said policies were issued."

It was further alleged: "That gasoline and alcohol were kept and used in connection with such unlawful matters and that such keeping and use were within the control or knowledge of plaintiff. * * * That said unlawful matters and use began on or about July 13th, 1925, and continued until time of said loss and that such matters greatly increased the hazard from fire."

It was further alleged "that on or about July 13th, 1925, after the issuance of said policies, there was a change in the possession of said premises, and a change of occupants with an increase in hazard."

It was further alleged: "That there was kept, used and allowed on the premises described in said policies gasoline and alcohol in large quantities; at the time of and for a long time prior to said loss and on and after July 13th, 1925. That said articles are explosives. That gasoline is a product manufactured from petroleum and of greater inflammability than kerosene oil of the United States standard."

On December 30, 1925, the appellee declared said policies void as of July 13, 1925. The trustee named in the deed of trust declined to institute proceedings in foreclosure, and upon such refusal this suit was filed.

The appellant, by his answer, admitted the issuance and delivery of the policies and the execution of the mortgage, but challenged the validity of certain portions of the mortgage clause attached to said policies. He denied other pertinent allegations of the bill.

On July 13, 1925, after the issuance and delivery of said policies, the appellant leased for immediate occupancy a portion of said premises to one Armeno. Thereafter, and until October 1, 1925, Armeno illegally op-

erated a number of distilling apparatuses therein for the distillation of alcoholic spirits, and in connection therewith he had kept large quantities of gasoline and alcohol in said premises.

Said stills had an aggregate capacity of 1,200 gallons of alcohol for each 24 hours. The stills were located on the second and third floor. A part of the equipment was on the first floor. During the same period and for a long time previously, the appellant owned and operated in the same premises the E. L. Miller Manufacturing Company. This company was engaged in manufacturing water fillers, oil burners, ice can fillers, and some other small appliances. It occupied the first floor immediately under the rooms leased by Armeno, in addition to other space. Ingress and egress by Armeno and his employees were observable by those engaged by the E. L. Miller Manufacturing Company.

Appellant's factory employees, as well as occupants of adjacent premises, not only detected the odor of alcohol and cooking mash emanating from said premises, but according to the overwhelming evidence it was necessarily noticeable by all persons in and about those portions of the premises occupied by the E. L. Miller Manufacturing Company.

Appellant testified that he was absent from the factory plant of E. L. Miller Manufacturing Company at all times except between August 9th and August 30th preceding the fire. He disclaimed any knowledge of the use to which said premises were being put by Armeno.

Appellant's son was his agent and assistant and executed the lease to Armeno on behalf of the appellant. It was in evidence that defendant's son was in the room, where some of the stills were located, on one occasion. Moreover, an employee of his father's factory called his attention to the unlawful use being made of said premises. While this was denied by the son, yet it was evidence for the consideration of the chancellor who was able to observe the demeanor of the witnesses.

Several employees of the E. L. Miller Manufacturing Company testified for appellee as to the presence of alcoholic odors and other suspicious circumstances relative to the wrongful use of the premises. There was evidence justifying the inference that the illegal use of said premises by Armeno became a matter of common knowledge in the E. L. Miller Manufacturing Company plant.

■ The chancellor below properly found from the evidence that the appellant either knew of the wrongful or illegal use of his premises or that he should have known of that fact. Appellant's water bills suddenly increased from a minimum of $1 to more than $20 per month when Armeno became a tenant. The operation of five stills on the second floor immediately above the rooms occupied in part by appellant's factory, with the necessary use of equipment involving material, receptacles, boilers, and other articles, could not be done in secret. Such material and equipment, as well as the product, would have to be moved in and out and would challenge the notice and attention of any one situated as was appellant and his aid. The court properly charged him with knowledge of the unlawful use of his premises and the consequent increase in the hazard.

The appellant challenges jurisdiction in equity upon the ground that the appellee has a plain, adequate, and complete remedy at law. He denies, moreover, that said policies were rendered void by any wrongful act or acts on his part. Other facts will be noticed and discussed in the course of the opinion.

1. When appellee filed its bill, the sufficiency thereof was challenged by a pleading designated a "demurrer." It was not there asserted that the appellee had a plain, adequate, and complete remedy at law. Said "demurrer" partook of the nature of a demurrer in a law case. The pleading filed by appellee and upon which the case was tried was designated "Amended Bill in Equity."

■ The case was duly docketed on the equity side of the court. Equity Rule No. 22 (28 USCA § 723) provides that an action improperly brought on the equity side of the court "shall be forthwith transferred to the law side and be there proceeded with." Appellant should have moved to transfer the case to the law side. He failed to make such a motion and by proceeding to a hearing he waived his right, if any existed. Fay v. Hill (C. C. A.) 249 F. 415, loc. cit. 418.

■ Moreover, appellee necessarily invokes the doctrine of subrogation. Notwithstanding the agreement in the policy, the appellee did not become ipso facto subrogated to the rights of the creditor. Subrogation "is not a substantive tangible right of such nature and character that it can be seized and held and enjoyed independently of a judicial proceeding. It is a right in action only, that is, it must be established by a judicial proceeding. For this purpose, resort must be had to a civil action." 25 R. C. L. § 70, p. 1391.

■■ Appellee's action was properly lodged in equity. This being true, we may assume

that foreclosure is a statutory and therefore a legal proceeding, still jurisdiction in equity will not be relinquished until purely legal rights have been determined. Shaffer v. Carter, 252 U. S. 37, 40 S. Ct. 221, 64 L. Ed. 445. But foreclosure is not necessarily a statutory proceeding. Keith & Perry Coal Co. v. Bingham, 97 Mo. 196, 10 S. W. 32. Even if so, the remedy at law to be adequate must be a remedy at law in the federal court where jurisdiction in equity is sought. Coler v. Board of Com'rs of Stanly County (C. C.) 89 F. 257; Smyth v. Ames, 169 U. S. 466, 18 S. Ct. 418, 42 L. Ed. 819.

2. It was provided by the policy that it should become void (a) "if the hazard be increased by any means within the control or knowledge of the insured." This provision stands alone and separate from the other provisions of the policy. According to the evidence, the hazard was greatly increased by means which were within the knowledge and control of the insured. Large quantities of gasoline were kept and stored in said premises for use in connection with the illegal manufacture of alcohol. Moreover, according to the evidence, alcohol itself is an explosive substance. It would be idle to say that the hazard of said premises was not increased by the installation and operation of distilling apparatuses in accordance with the methods and means shown to have been employed in this case. All the evidence points conclusively to that fact. The trial court properly found that these matters were within the knowledge and control of the appellant. This court must reach the same conclusion from an examination of the evidence. Such a provision in the policy has been held to be reasonable. Imperial Fire Ins. Co. v. Coos County, 151 U. S. 452, loc. cit. 463, 14 S. Ct. 379, 38 L. Ed. 231; Norwaysz v. Thuringia Ins. Co., 204 Ill. 334, 68 N. E. 551.

The evidence justifies the conclusion that the appellant knew of the illegal manufacture of alcoholic spirits in his building. Appellant cites, but is not aided by, Colker v. Connecticut Fire Ins. Co., 224 Ky. 837, 7 S.W.(2d) 502, 505, where the court approved the following as a proper instruction: "If the plaintiff had, in good faith, rented to James Martin the sheet and metal building and Martin had installed and operated the moonshine still therein, without the plaintiff's consent, and plaintiff did not know it and in the exercise of ordinary care, under the facts known to him, should not have known it, then same was not by means within his control." The court then said: "The operation of the moonshine still increased the hazard to the property."

Although appellant said that he had forbidden such illegal use of his premises, and had stipulated in his lease that the premises should not be used in violation of the law, yet appellant permitted them to be so used. He reserved in his lease the right "to enter at all reasonable times to view the premises." Yet with all the suspicious circumstances, appellant never exercised that right. It was within his power to enforce the provisions of the lease. In fact, he had the right to enforce an implied warranty that the premises should not be put to an unlawful use. 36 C. J. 87. It would appear, therefore, that the hazard was increased by means within both the control and knowledge of the appellant.

3. It is contended by the appellant that the policies themselves contain no provision relative to the use of said premises. When the policies were written, the premises were occupied by the E. L. Miller Manufacturing Company. This company was engaged in the manufacture of water fillers, oil burners, ice can fillers, and other small appliances. Both parties knew the nature and hazards of this occupancy. It was unnecessary to stipulate in the contract the nature of the occupancy and the hazards thereof when both were well known to the contracting parties.

4. The policies provided that they should be void in the event of a change of possession with increase in hazard. There was such a change of possession of a part of said premises with a very material increase in hazard. The policies became void under this provision. Appleby v. Firemen's Fund Ins. Co., 45 Barb. (N. Y.) 454, (second appeal) 54 N. Y. 253; Planters' Mutual Ins. Ass'n of Arkansas v. Dewberry, 69 Ark. 295, 62 S. W. 1047, 86 Am. St. Rep. 195.

It was further provided that said policies should become void "if there be kept, used or allowed" on said premises gasoline or other explosives. Undeniably large quantities of gasoline and alcohol were kept and used on said premises by Armeno. Such articles were used in connection with the unlawful manufacture of alcoholic spirits. This was a violation of the contracts and warranted the appellee in declaring them void. La Force v. Williams City Ins. Co., 43 Mo. App. 519; Liverpool & London Ins. Co. v. Gunther, 116 U. S. 113, 6 S. Ct. 306, 29 L. Ed. 575; Gunther v. Liverpool Ins. Co., 134 U. S. 110, 10 S. Ct. 448, 33 L. Ed. 857; Leonard

v. Northwestern Nat. Ins. Co., 53 App. D. C. 343, 290 F. 318.

5. Neither can the storing and use of gasoline and alcohol on said premises be excused or justified under the so-called work and material clause of the policies. This provision reserves to the occupant the right to use "the premises as is usual and incidental in the business * * * as conducted therein * * * when not in violation of any law."

Obviously and admittedly the materials in question were used in violation of law as the premises were being used not only to violate the prohibitory laws of the government but the revenue laws as well.

6. The appellant makes the further contention that the provision in the mortgage clause for subrogation is in violation of the standard policy form provided for by the laws of Missouri. An applicable Missouri statute (Rev. St. Mo. 1919, § 6239) requires that each company doing business in the state of Missouri shall file its form of policy to be used "covering the responsibilities of the companies as well as the duties of the assured, to be classed and known as its form of Missouri fire insurance policy." It is further provided that "after the first day of July, A. D. 1919, no policy shall be issued in this state carrying risks by fire or lightning by any company which does not embrace the form filed and approved of, as herein provided."

It is to be noted that the policies in suit embraced the forms filed and approved, but contained other conditions not inconsistent with those appearing in the form filed. The form filed and approved specifically provided for "such other provisions, agreements or conditions as may be endorsed hereon or added hereto." It was not only clearly within the rights of the parties to provide for a subrogation agreement, but such could have been enforced as legal subrogation without such an express stipulation.

The evidence tended to show that the superintendent of insurance of the state of Missouri was entirely familiar with appellee's amplified mortgage clause, and that its use had been permitted as lawful and not inconsistent with the form filed.

7. Appellee had a right to declare the policy void as against the appellant. This right was not waived by its examination of the assured. Such an examination was provided for in the contract. Neil Bros. Grain Co. v. Hartford Fire Ins. Co. (C. C. A.) 1 F. (2d) 904.

No error appearing, and the decrees having been entered for the right party, the same should be and are

Affirmed.