W. S. Hogsett and Chester L. Smith (of Hogsett, Smith, Murray & Trippe), both of Kansas City, Mo., for plaintiff.

E. M. Harber, of Trenton, Mo., Charles W. Crossan, of Kansas City, Mo., and Bruce Barnett, of Joplin, Mo., for defendant.

**NATIONAL FIRE INS. CO. OF HARTFORD, CONN., et al. v. ALEXANDER et al.**

**No. 2781.**

District Court, W. D. Missouri, W. D.

Jan. 10, 1936.

REEVES, District Judge.

This is a proceeding in equity to establish a right of subrogation, and, when so established, to foreclose on certain property. Such proceeding involves, furthermore, the question of the right of the defendants to proceed against plaintiffs, or a part of them, to collect in court the benefits of policies of insurance on property described in the bill.

Briefly stated, the facts are: That, on May 8, 1922, the then owners of lot 10 of and in Goodwin Park, an addition or subdivision of land in Jackson County, Missouri, executed a deed of trust upon said property to secure a loan in the sum of $6,000 in favor of James C. Shelton, Jr. This loan was never paid, but continued as a lien against the property until the present time. The parties who executed the note and deed of trust subsequently conveyed their equity in said property to the defendant Murle Alexander. This conveyance was made on December 22, 1931. The said Alexander did not assume the obligations of the note for $6,000, but merely purchased the property subject to said note and deed of trust. His only obligation was to protect the property if he cared to hold the equity against default on the note.

At the time the transfer was made to him two policies of insurance on said property were assigned to the said Alexander. However, such policies, each in the sum of $3,000, contained a standard mortgage clause, which, in the event of loss, made the holder of said note the beneficiary of payments on the insurance to the extent of the indebtedness secured by the property. The two policies aggregated the exact amount of the indebtedness, namely, $6,000.

Subsequently, the defendant Murle Alexander, as the owner of the equity, procured additional insurance. Such insurance was issued concurrently with the acquisition of the equity by the said defendant. One policy in the sum of $6,000 was issued by American Equitable Assurance Company of New York; it bore date December 21, 1931, and, as in the case of the assigned policies, contained a mortgage clause in favor of the holder of the note, namely, James C. Shelton, Jr. On the same date, another policy in the sum of $6,000 was issued by Girard Fire and Marine Insurance Company of Philadelphia. It, too, had a mortgage clause of the same tenor and effect and in like manner James C. Shelton, Jr., was named as beneficiary.

While the mortgage clauses in the first two policies in the sum of $3,000 each varied somewhat in the language from those contained in the mortgage clause of the last two policies, yet each one provided in substance that, in the event of loss, the interest of mortgagee should be liquidated unless the right of the mortgagee had been forfeited by certain named default which might be occasioned by his omissions. The mortgagee, however, was relieved of a loss of his rights because of the negligence or wrongful acts of the assured committed without his knowledge or connivance. Each of the mortgage provisions specifically provided that only in the event of a dispute between the insurers and the assured as to their liability to him, then the insurers would be permitted to pay the mortgagee to the extent of his interest, and thereby become subrogated to all his rights in relation to the security held by him, such rights to accrue, both because of the fact of such payment and by specific transfer and assignment of the security to the insurers.

Shortly after the acquisition of the property, towit, on February 11, 1932, the property covered by the several policies was damaged by fire. The several insurers disclaimed liability in favor of the insured because of his acts and conduct, but acknowledge liability to the mortgagee.

The insured has instituted suits on the two $3,000 policies held by him and issued by the first named plaintiffs. One of said suits, that is, the one instituted against plaintiff Commercial Union Assurance Company, Limited, of London, England, is pending in the Circuit Court of Cass County, Missouri. The other suit against National Fire Insurance Company of Hartford, Connecticut, was filed and is pending in another circuit. Suits against the insurers which issued the two policies in the sum of $6,000 each have not been brought.

1. The plaintiffs at this time seek an injunction, to restrain the prosecution of the suits in the state courts.

In this preliminary application there is no dispute as to the facts. The defendants have moved to dismiss the bill, and, in so doing, challenged the jurisdiction of the court.

A proper construction of the mortgage clause would be helpful in deciding the points involved. Each of the contracts involve three parties, the insurer, the mortgagee, and the assured. The mortgagee occupied a preferred position. His interest in case of loss was to be liquidated first, and, moreover, even though the policy or policies might be rendered void as against the insured, nevertheless the rights of the mortgagee would be preserved. It was the agreement among the parties, as evidenced by the mortgage clause, upon the mere claim by the insurer, in the event of a loss, that if no liability existed in favor of the insured, payment to the mortgagee might be made, and, in such case, the insurer might take over the security held by the mortgagee and utilize it as a measure of reimbursement as against the insured. If the insurer should be unable to prevail in its controversy with the insured, then the payment to the mortgagee would stand only as a credit upon its obligation under its policy. If, however, the insurer prevailed in its controversy with the assured, it became entitled to enjoy the benefits of its collateral acquired by agreement of the parties from the mortgagee.

In the case at bar, the several insurance companies have denied liability to the assured. They have paid the mortgagee,

whose claim was unimpeachable, and they now seek to establish a right agreed upon by all the contracting parties to utilize the collateral for their benefit if able to defeat the claim of the insured.

2. The averments of the bill show conduct on the part of the insured which would prevent recovery. If, therefore, these averments are true, the plaintiffs are entitled to maintain this action. This means that they have stated in their bill a cause of action. The plaintiffs are jointly interested; two of them have been sued in state courts. It would' not seem to be necessary for the other two plaintiffs, or the two plaintiffs now being sued, to postpone proceedings to utilize the security acquired by them until it had been determined in four different law suits whether such security would be available for them.

Each of the plaintiffs is a non-resident of the state. The defendants (Sadie Alexander having only a marital interest) are residents of Missouri. There is a diversity of citizenship. The amount in controversy is more than $3,000. The plaintiffs upon their bill clearly have rights which they are entitled to assert in this proceeding. If they prevail as against the defendants, it will end the litigation. The same result would follow if the defendants should prevail. This means that four different law suits could be settled in this case, and, concurrently, the plaintiffs could have established, if successful, their subrogation rights and at the same time obtain a decree of foreclosure on the property which stands as their security.

3. This action does not fall within the exception found in Section 41, Title 28, U.S.C., 28 U.S.C.A. § 41, relating to the general subject of original jurisdiction of United States District Courts.

It is not a suit to recover upon a promissory note or a chose in action in favor of an assignee. The makers of the note are not parties. The security was not a chose in action before acquired by the plaintiffs. The plaintiffs extinguished the debt so far as the mortgagee was concerned; this was done by general agreement in the policies. Such agreement provided that the security might be taken over by the plaintiffs and utilized for their reimbursement in the event that they were able to maintain their claim that the policies were void as against the assured.

For the first time a controversy arose, not on the note, and not on the security, but a controversy between the plaintiffs and the defendants as to whether upon the facts the plaintiffs were entitled to utilize the security for their reimbursement because of the defaults of the defendants.

The only controversy, therefore, as previously stated, is between the parties having a diverse citizenship.

In accepting the insurance policies, the defendants agreed that the plaintiffs might have subrogation as to the security when the debt against the property was paid, if it should be claimed that no liability existed in favor of the assured.

It does not seem necessary to cite the many authorities which fully sustain this position.

Accordingly, the motion to dismiss the bill will be overruled, and the plaintiffs will be granted an injunction in accordance with the prayer of their bill. It is so ordered.